IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARLOS M. BALDRIDGE,

    Plaintiff,                      17cv0273
                                      ELECTRONICALLY FILED
    v.

AMICA MUTUAL INSURANCE
COMPANY, et al.,

    Defendants.

## MEMORANDUM ORDER

Before the Court are Cross Motions for Partial Summary Judgment on a discrete issue in this insurance coverage dispute. See doc. nos. 26 and 28. The issue to be determined by this Court at this juncture of the proceedings is whether underinsured motorist coverage is available to Plaintiff for stacking purposes on one of his four personal vehicles which Defendant insured.

### I. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute

"to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004), quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001), quoting Celotex, 477 U.S. 317, 325 (1986).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), citing *Anderson*, 477 U.S. at 255.

In the instant case, the parties have filed cross-motions for summary judgment. It is well established in this Circuit that the filing of contradictory motions for summary judgment "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008), quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

## II. FACTUAL BACKGROUND

Because the Court writes primarily for the Parties, this section will be truncated so that only the facts relevant to the adjudication of the narrow issue presented shall be set forth.

Plaintiff was injured in a motor vehicle accident on June 10, 2014, when his vehicle was rear-ended by another vehicle. See Complaint at doc. no. 1-2, ¶ 4-7. Plaintiff settled the underlying accident for the limits of the tortfeasor's insurance policy with Defendant's consent.

Plaintiff has averred that the injuries he sustained as a result of the underlying motor vehicle accident have rendered him unable to work as a professional truck driver, have caused him to expend money for medical treatment and care, and will continue to cost him money for medical care in the future. Id. at ¶ 8-9.

Defendant issued the insurance policy in question to Plaintiff on June 16, 2013, and provided coverage through June 16, 2014. Doc. no. 13, ¶ 90; doc. no 14, ¶ 2. This policy originally listed three vehicles, among them, a 1991 Ford Mustang ("Mustang"). Doc. no. 13, ¶ 91; doc. no 14, ¶ 3. In October of 2013, Defendant added an additional vehicle to its insurance policy, thereby insuring a total of four vehicles. Doc. no. 13, ¶ 94; doc. no 14, ¶ 6.

The Parties do not dispute that Defendant insured four of Plaintiff's personal vehicles, nor that he had underinsured motorist coverage ("UIM coverage") in the amount of $300,000.00 on three of the four of those personal vehicles. Doc. no. 13, ¶ 96; doc. no 14, ¶ 8. The only question for the Court to resolve by way of these Cross-Motions for Summary Judgment is whether Plaintiff had or is entitled to UIM coverage on the fourth vehicle, specifically, his Mustang. Id. See also, doc nos. 26 and 29. Thus, the question for this Court to resolve is whether Plaintiff had UIM coverage in the amount of $900,000.00 ($300,000.00 multiplied by three (3) vehicles) or $1,200,000.00 ($300,000.00 multiplied by four (4) vehicles).

Plaintiff's position is that he never executed a valid waiver rejecting UIM coverage for the Mustang, and thus, he is entitled to a determination that he has UIM coverage on the Mustang in the amount of $300,000.00, just like he did on his three other vehicles, resulting in a total of $1,200,000.00 in UIM coverage. Doc. no. 26. In short, Plaintiff contends that because he did not execute a valid waiver rejecting UIM coverage on the Mustang, he is entitled to stack an additional $300,000.00 on top of his other three vehicles' UIM coverage. Id.

Defendant's position is that because it never provided liability coverage on Plaintiff's Mustang, Defendant was never required to offer Plaintiff UIM coverage on the Mustang. Doc. no. 29. Defendant, in support of its argument, produced a portion of the insurance policy it issued to Plaintiff which indicates that the Mustang was "not covered" for liability; but rather, solely covered "damage to the [Mustang]" for accidents "other than collision loss." Doc. no. 28-2, p. 24.

Because this is an issue of law, and there are no material facts in dispute, this matter is ripe for adjudication.

## III.  DISCUSSION

This matter is governed by Pennsylvania law.  Pennsylvania statutory law governs insurance requirements on motor vehicles such as the one at issue.  Relevant to the Court's discussion is the section on the availability, scope, and amount of UIM coverage which reads in pertinent part as follows:

> **(a) Mandatory offering**.--No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.
>
>                  *        *        *
>
> (**c**) **Underinsured motorist coverage**.--Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:
>
>         REJECTION OF UNDERINSURED MOTORIST PROTECTION
>
> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.
>
>            _____
>            Signature of First Named Insured
>
>            _____
>            Date
>
> **(c.1) Form of waiver**.--Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form,

uninsured or underinsured coverage, or both, as the case may be, under
that policy shall be equal to the bodily injury liability limits. On policies in
which either uninsured or underinsured coverage has been rejected, the
policy renewals must contain notice in prominent type that the policy does
not provide protection against damages caused by uninsured or
underinsured motorists. Any person who executes a waiver under
subsection (b) or (c) shall be precluded from claiming liability of any
person based upon inadequate information.

75 Pa.C.S.A. § 1731.

Another portion of Pennsylvania's Motor Vehicle Code at issue in this matter reads in pertinent part as flows:

> A named insured may request in writing the issuance of coverages under
> section 1731 (relating to availability, scope and amount of coverage) in
> amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S.A. § 1734.

Interpreting these two sections the Supreme Court for the Commonwealth of Pennsylvania has held:

> . . . [W]e agree with the characterization of Sections 1731 and 1734
> offered by the Third Circuit in *Nationwide Ins. Co. v. Resseguie,* 980 F.2d
> 226, 230 (3d Cir. 1992). Tasked with interpreting the requirements for an
> effective Section 1734 reduction, the Third Circuit began its statutory
> construction analysis as follows:
>
> > [Section] 1731 is a simple statement whose plain meaning is
> > apparent from its language. It mandates that an insurance
> > company cannot issue a policy in the Commonwealth of
> > Pennsylvania unless it provides UM/UIM coverage equal to the
> > bodily injury liability coverage, except as provided in § 1734.
> > ...
> > [W]e also agree that [Section] 1734's language is plain and the
> > Pennsylvania General Assembly's intention is clear. By its
> > terms, a named insured may lower her statutorily provided
> > UIM coverage limits by requesting in writing of her insurer to
> > do so. The insurance company's obligation to *issue* a policy
> > with [UM/UIM] coverage in an amount equal to the policy's

> bodily injury liability coverage is not relieved unless it has
> received such a written request.
>
> *Id.* at 231 (emphasis added).

*Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1226 (Pa. 2007).

Applying the above cited law to the instant matter, the Court notes that plain reading of Section 1731(a) reads, "[n]o motor vehicle *liability* insurance policy shall be delivered . . . unless . . . underinsured motorist coverages are offered . . . ." (emphasis added). Defendant has produced pages of the insurance policy at issue which indicates that the Mustang was "not covered" for "liability". See doc. no. 28-2, p. 24. The only coverage for which the Mustang was "covered" was the "other than collision loss" coverage. Id.

This policy issued to Plaintiff appears to have provided liability coverage for the other three vehicles, but not for the Mustang. Because the Mustang was not insured for liability, this Court concurs with Defendant that the plain and unambiguous reading of the relevant statutes would indicate that the Defendant was never required to offer UIM benefits on the Mustang. Accordingly, no signed waiver of UIM benefits with respect to the Mustang was required by law.

## IV. CONCLUSION

The Court concludes that there is no UIM coverage available to Plaintiff for the Mustang under the policy of insurance. Therefore, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. As discussed during the case management conference, the Parties will now return to their Early Neutral Evaluator (followed by mediation) to see if the matter can be resolved without further action by this Court.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

**ORDER OF COURT**

AND NOW, this 30th day of June, 2017, the Court hereby GRANTS Defendant's Motion for Summary Judgment (doc. no. 28) and DENIES Plaintiff's Motion for Summary Judgment. Doc. no. 26. The Parties are further ORDERED to return to their Early Neutral Evaluator (followed by mediation) to see if the matter be resolved without further action by this Court.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Registered Counsel of Record